Philadelphia College of Osteopathic Medicine, Petitioner *v.* Workmen's Compensation Appeal Board (Robert L. Lucas), Respondents.

Argued April 7, 1983, before Judges BLATT, CRAIG and DOYLE, sitting as a panel of three. Reargued June 7, 1983, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, WILLIAMS, JR., CRAIG, MACPHAIL and DOYLE.

*Lynn Sare Kornblav,* with her *Alfred Sarowitz* and *Leonard S. Lipson,* for petitioner.

*S. Robert Levant,* for respondent, Robert L. Lucas.

OPINION BY JUDGE ROGERS, September 15, 1983:

The Philadelphia College of Osteopathic Medicine has petitioned for review of an order of the Workmen's Compensation Appeal Board affirming a referee's award of workmen's compensation benefits to

claimant, Robert L. Lucas, for temporary total disability.

The claimant was employed by the petitioner from December, 1976, through May, 1977, as a security guard. His duties included patrol at nine different posts three of which were out-of-doors. The claimant's stint included the very cold winter months of 1976-1977.

On cold days the claimant suffered leg pains. He notified his employer of his complaints and requested inside work. He also requested permission to wear heavier, more appropriate cold weather clothing. This request was denied as not conforming to the required guard attire. He did not miss any work until April 13, 1977, when for a time his legs were so swollen that he could not work. His last day of work was May 17, 1977. He called in sick on May 18 and did not thereafter return to work.

The claimant suffers from advanced osteoarthritic degenerative joint disease affecting, in addition to other limbs, his lower extremities. His treating physician testified that this condition was aggravated by the duties of the claimant's employment—the requirements that he be on his feet for long hours, the walking and climbing of steps and most importantly the exposure to cold, humidity and changes in the weather and barometric pressure. The same doctor expressed the opinion that the claimant could do only some—that is, part-time—sedentary work. The employer adduced the testimony of a physician to the effect that there was no relationship between the claimant's symptoms and his work. This doctor conceded that the claimant's condition would allow him to do only sedentary work. A rehabilitation psychologist testified for the employer that there were in his opinion some jobs available which the claimant could do—such as bench work in the optical trade, lot assemblies in the appli-

ance industry, and tube tester in the electrical equipment field. Since this witness was not a medical doctor, his opinions were necessarily based on psychological considerations only. The jobs this witness mentioned seem all to have required the applicant to work full time.

As noted, the referee concluded that the claimant was totally disabled and awarded appropriate benefits. He found as facts (1) that the claimant's pre-existing arthritic condition was aggravated by his work as a security guard for the employer and that the aggravation was a cause of his disability and (2) that the extent of the claimant's disability was such that the claimant would be able to do only sedentary work for from two to four hours a day.

The employer contends that the claimant's evidence in support of the referee's findings just mentioned was not competent because his doctor did not give "unequivocal medical testimony" regarding these facts in question. Therefore, the employer says that the claimant has not proved that the cause of his disability was his work experience, requiring us to reverse the award outright, and also that the claimant did not prove that he could do sedentary work for from two to four hours only, requiring us at the best for the claimant, to remand the record for a determination of the claimant's capacity to do sedentary work based on other record evidence or another physical examination.

The phrase "unequivocal medical testimony" is a shorthand term lawyers and courts have devised and used for the rule of the common law, brought over to the field of workmen's compensation, to the effect that one contending that a condition of disability is the result of injury arising in the course of employment, must, unless the disability is clearly the result of a work injury, produce the expert medical testimony

that the claimant's condition in the expert's professional opinion did come from the work experience. *McCrosson v. Philadelphia Rapid Transit Co.,* 283 Pa. 492, 129 A. 568 (1929); *Vorbnoff v. Mesta Machine Co.,* 286 Pa. 199, 133 A. 256 (1926). *See also Fink v. Sheldon Axle & Spring Co.,* 270 Pa. 476, 113 A. 666 (1921), where the rule was first expressed, but later explained and modified in *McCrosson* and *Vorbnoff.* It is not sufficient for the medical witness to testify that the claimant's condition might have been or probably was the result of the claimant's work. However, it is not absolutely essential that the expert say "that it is my professional opinion" and it is sufficient for the expert to say "I think" or "I believe" as the assertion of his opinion. *See Elonis v. Lytle Coal Co.,* 134 Pa. Superior Ct. 264, 3 A.2d 995 (1939).

Unfortunately, the phrase "unequivocal medical testimony" may seem to import, and certainly is sometimes suggested by counsel in the heat of argument to require, a stricter and more widely applied test of medical opinion testimony than do the rules laid down in the cases just cited, to which the phrase was intended only to give a name. Certainly it is not the law, as it has been sometimes argued, that every utterance which escapes the lips of a medical witness on a medical subject, must be certain, positive, and without reservation, exception, or peradventure of a doubt. We repeat, that as to facts which a claimant must prove by medical evidence, it is sufficient that his medical expert, after providing a foundation, testify that in his professional opinion or that he believes or that he thinks the facts exist. The claimant has, in such event, produced competent evidence of the facts which, if accepted by the factfinder will support an award, even if the medical witness admits to uncertainty, reservation, doubt or lack of information with respect to medical and scientific details; so long as the

witness does not recant the opinion or belief first expressed.

The claimant's expert witness was a treating physician specializing in rheumatology to whom the claimant was referred and who treated the claimant in April and in May when the claimant spent a month in a rehabilitation hospital, and in August, 1977, and thereafter. He described as history that in December, 1976, the pain in the claimant's knees was intermittent but that at that time, a date incidentally some three months after the claimant started work for the employer and five months after he was forced to stop, the pain became constant. This witness described the change in the claimant's symptoms of pain and effusion of the knee during the period of employment; he connected these symptoms to the standing, walking, climbing stairs and the weather conditions which he testified aggravated the preexisting arthritic conditions. We believe the doctor's testimony as a whole sufficiently meets the test of the cases that the medical testimony be to the effect that the claimant's work experience did aggravate his preexisting arthritic condition and cause his disability.

The employer also contests the referee's finding that the claimant could "perform a job sedentary in nature . . . of no more than two to four hours a day." This finding seems to have been founded on the doctor's response to a question in cross-examination of how many hours a day he believed the respondent could work at a sedentary job. The doctor responded, "I could give you a guess, two to four hours." Of course, evidence founded upon a guess is not competent and cannot be the basis of a finding and the referee's finding must be disregarded. However, the doctor in response to further cross-examination also testified that his "rough estimate" was that the claimant could not sit continuously for longer than one to two

hours. Furthermore, where the employe has proved his inability to do the type of work in which he was previously engaged, as all of the witnesses agreed was the case here, the burden was on the employer to prove the availability of other work the employee could do. Since the claimant produced evidence that he could not do sedentary work full time, the employer did not carry its burden to prove the availability of work the claimant could do by proving that there were jobs which could be done while seated. We see no useful purpose to be served in sending this case back for still more hearings on this score.

Order affirmed.

### ORDER

AND Now, this 15th day of September, 1983, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.

---

DISSENTING OPINION BY JUDGE BLATT:

I respectfully dissent.

The significant parts of the medical expert's testimony in this case are as follows:

A: He came to me with worsening since December of '76 and it seemed like he had arthritis to begin with but this was aggravated by the circumstances at work. (Direct Examination of Dr. Ved P. Gupta, lines 20-23, Appellant's Reproduced Record at A-134.)

A: If his work involved, or he was exposed to sudden changes in temperature, severe cold, yes, his symptoms could increase pretty well. (Direct Examination of Dr. Ved P. Gupta, lines 14-16, Appellant's Reproduced Record at A-136.)

A: I think with the sequence and time, I could make an opinion that *it is possible* that

these changes in, or the circumstances that he was exposed to during his work could aggravate his symptoms, and *it's conceivable.* If it did not happen, it's something else. *If he said he was exposed to these things, it's conceivable they were aggravating factors.* (Cross-Examination of Dr. Ved P. Gupta, lines 22-24 and 1-4, Appellant's Reproduced Record at 159-160.) (Emphasis added.)

The majority opinion notes on page 4 [206] that the standard for admissibility of expert medical testimony on the subject of causation is: "It is sufficient that his medical expert, after providing a foundation, testify that in his professional opinion or that he believes or that he thinks the facts exist . . . even if the medical witness admits to uncertainty, reservation, doubt or lack of information with respect to medical and scientific detail." The phrases "professional opinion" and "he believes", however, are left undefined in the majority's opinion. Yet a meaning, never previously accepted by this Court, is given to these phrases when applied to the facts.

The opinion of the medical expert here, it seems to me, amounted to nothing more than this: that it was conceivable that the condition to which the appellee was exposed to during his work could have aggravated his symptoms. And "conceivable" is defined by Webster, as: "1: capable of being conceived, imagined, or understood 2: logically possible." Webster's New International Dictionary 469 (1966).

Although it is clear that absolute certainty has never been previously required, the courts have required a minimal standard which is best articulated in *Vorbnoff v. Mesta Machine Co.,* 286 Pa. 199, 206, 133 A. 256, 258 (1926): "that is to say, the witness would have to testify, not that the condition of claimant might have, or even probably did, come from the acci-

dent, but that in his professional opinion the result in question came from the cause alleged." And, although the majority attempts to articulate a standard similar to *Vorbnoff*, it broadens the threshold requirement for admissibility by allowing evidence predicated upon "conceivability" or "could have" standards, which are really the same as the "might have" or "probably did" standards rejected in *Vorbnoff*.

While recognizing the nuances of our language, which make it frequently difficult to frame a rule of law which conveys an intelligible standard, I cannot agree with the majority's effort here to "clarify" the current standard, while at the same time introducing another very unclear element into the situation.

I would, therefore, reverse this order of the Board.

———

DISSENTING OPINION BY JUDGE MACPHAIL:

I respectfully dissent.

While I agree with the majority's treatment of what is meant by "unequivocal medical testimony", my own review of the record leads me to the conclusion that such testimony is lacking in the instant case. For that reason, I would reverse.