Nancy Brennan, Widow of Albert M. Brennan, Petitioner *v.* Workmen's Compensation Appeal Board (Reading Anthracite Company and Commonwealth of Pennsylvania), Respondents.

Submitted on briefs November 16, 1983, to Judges ROGERS, BARRY and BARBIERI, sitting as a panel of three.

*Lester Krasno,* for petitioner.

*Timothy G. Lenahan, Lenahan & Dempsey, P.C.,* for respondent, Reading Anthracite Company.

OPINION BY JUDGE ROGERS, December 28, 1983:

Nancy Brennan, a workmen's compensation claimant, has appealed from an order of the Workmen's Compensation Appeal Board affirming the action of a referee denying her benefits for the death of her husband, Albert Brennan, under Section 301(c)(2) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411(2).

Section 301(c)(2) provides "[t]hat whenever occupational disease is the basis for compensation, . . . it shall apply only to disability or death resulting from such disease. . . ." The issue is whether the claimant met her burden of establishing by unequivocal medical testimony that her husband's death resulted from anthracosilicosis.

The decedent was employed by Reading Anthracite Company from 1965 until June 24, 1977. At about one o'clock a.m. on June 25, 1977, he lost consciousness while eating peanuts and drinking beer on the back of a pickup truck. He regained consciousness but lost it a second time one-half hour later. He was dead on arrival at a hospital.

A fatal claim petition was filed by the claimant on October 9, 1979, in which she alleged that her husband died as a result of anthracosilicosis which he had contracted during his employment at Reading Anthracite Company. The medical evidence introduced by the claimant concerning the cause of her husband's death consisted of her testimony that her husband had given up baseball and was "more reluctant" to do household repairs during the year prior to his death and the testimony of Dr. Richard P. Bindie who stated that "[a]fter a complete autopsy examination which included toxicology studies and microscopic studies of tissues and all, I came to the conclusion that he died as of a respiratory death secondary to aspiration of gastric contents." When asked whether he was "able to formulate a conclusion as to whether or not the death of June 25, 1977, was related to his [the decedent's] twelve years of coal mining employment," Dr. Bindie responded as follows:

A: Okay; he did have evidence of coal worker's pneumoconiosis. Now, this wasn't striking evidence, but they weren't normal

lungs. When I say they weren't striking, they weren't like a Stage 3 or massive fibrotic legions [sic] that we see in mines. This man had the very early stages of this disease but he did have these so-called macules in his lungs, plus he had emphysematous changes about some of them. And the way today on worker's pneumoconiosis. The early stages are not generally associated with any x-ray changes but despite normal appearing x-ray, the pulmonary function is altered. It is not quite a normal pulmonary function. You get these little focal areas of emphysema and pulmonary resistance is not normal like it should be and so it is my opinion I can't, like I said here, it's possible that—

Q: Doctor, based on reasonable medical certainty, are you able to reach an opinion as to the cause of Al Brennan's death as it relates to his condition of anthracosilicosis as you found it and the coal mining function?

A: Now, the cause of death has to be attributed to this aspiration because the autopsy was otherwise negative including the toxicology. Now, in my opinion, without his underlying lung condition, he could have possibly made it to the hospital and have been treated and survived but—

Q: Now, Doctor, can you tell us based upon reasonable medical certainty, and based upon your findings, whether absent the pulmonary condition, Albert Brennan would have survived the aspiration?

. . . .

A: Yes, that's a possibility and it cannot be excluded with any certainty.

Q: Well, Doctor, that's not what I'm asking you. What I'm asking you is can you tell us in your opinion based upon reasonable medical certainty whether absent the underlying pulmonary condition, Mr. Brennan would have been able to survive the instant problem of June 25, 1977?

A: In my opinion he would have been able to survive it.

Q: And who [sic] do you so conclude, Doctor?

A: Just from experience that aspiration of gastric contents is a common problem that we see in hospitals and we see people brought in with aspiration aid, you know, they are in a coma and they have normal underlying lungs and heart functions, a lot of these people are treated and they could survive this.

Section 301(c)(2) of the Act requires medical evidence to be presented which establishes that the decedent's death resulted from an occupational disease, not simply that the disease was present. When causality is not obvious, it must be proven by unequivocal medical testimony. *Elliott v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 70, 425 A.2d 885 (1981). While it is sufficient for a medical witness to say that he thinks or that he believes that a decedent's death resulted from an occupational disease, it is not sufficient to testify that the decedent's death might have been or probably was the result of an occupational disease. *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board,* 77 Pa. Commonwealth Ct. 202, 465 A.2d 132 (1982). Dr. Bindie's opinion was that the decedent's death might not have occurred if he had not had anthracosilicosis. This was not suffi-

cient proof that his death resulted from anthraco-silicosis.

Order affirmed.

ORDER

AND Now, this 28th day of December, 1983, the order of the Workmen's Compensation Appeal Board dated June 18, 1981, is hereby affirmed.