Penn Pad Company, Petitioner *v.* Workmen's Compensation Appeal Board (Altholz), Respondents.

Argued April 2, 1984, before Judges ROGERS, PALLADINO and BARBIERI, sitting as a panel of three.

*Susan B. Mustoloff*, with her, *Joseph S. Bekelja, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer,* for petitioner.

*Richard M. Meltzer, Malis, Tolson & Malis,* for respondents.

OPINION BY JUDGE PALLADINO, July 5, 1984:

Penn Pad Company (Employer) appeals here from an order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's granting of death benefits to Maria Altholz (Claimant), the widow of Moses Altholz (Decedent). We affirm.

The Decedent was employed by the Employer as a machine operator. After completing a full day of work on October 18, 1976, the Decedent was changing his clothes in the Employer's locker room when he became dizzy and started to fall backwards.[1] As he was falling, the Decedent grabbed for the metal lockers in front of him. Upon falling to the floor, the Decedent pulled the entire row of metal lockers, which were not attached to the wall, down on top of him. A fellow employee, who witnessed the incident, helped lift the lockers off of the Decedent. Because there was no dispensary or treating room on the Employer's premises, the Decedent was taken home by his supervisor.

---

[1] Claimant had a medical history of dizziness.

When the Decedent arrived home, he was pale, his lips were gray, he was bleeding from a cut on one ear and he had bruises on his hands and around his head. Approximately twenty minutes after arriving home, the Decedent's family called for an ambulance to take him to the hospital. By the time the ambulance arrived, the Decedent had died.

At hearings before the referee, Claimant's medical witness, Dr. Carver, testified that taking into consideration the Decedent's preexisting coronary artery disease,[2] he was of the opinion, with reasonable medical certainty, that the incident involving the lockers contributed significantly to and accelerated an abnormality in the Decedent's heart rhythm which resulted in his death. Dr. Carver, when questioned by Claimant's counsel, testified as follows:

> Q. Doctor, in your previous testimony you used some words concerning you assumed (sic) that he had a heart attack. Do you have an opinion as of today as to whether or not Mr. Altholz had a heart attack?
>
> A. I am reasonably sure with at least a confidence level of 95 percent he had a heart attack.
>
> Q. Is it your testimony that if he did not have a heart attack, given his pre-existing disease, the incident of the lockers falling on top of him or coming into contact with him still contributed to his ultimate demise.
>
> A. Absolutely.
>
> . . . .

---

[2] Although the Decedent suffered from coronary artery disease at the time of his death, he was considered to be in stable condition leading a normal life.

A. Coronary disease is a very, even to a board certified cardiologist, is a very puzzling disease. The heart is supplied by three major arteries and those arteries supply oxygen to the heart muscle so that it can perform its pumping function and pump the blood around the heart. When the arteries are blocked and they can be blocked 70 or 80 percent, and you can have no symptoms or no problems with that disease whatsoever. However, when it needs more blood, when the heart needs more oxygen because it is doing more work, and having a locker fall on you or being frightened causes the heart to do more work. If those arteries are blocked and if the oxygen doesn't get to the muscle then the muscle cannot perform its work. When that happens the major thing that kills people is the abnormality in heart rhythm. It happens whether you have a heart attack. The people with coronary artery disease in the absence of heart attacks die suddenly when their work demands are increased. And the lockers falling on him, and if the artery is blocked and it needs 10 units of oxygen normally, it may get that. If he needs 20 units of oxygen because of some predisposing event and can only get 10 units through that narrow opening, then the muscle cries out for blood and the crying out can be pain, can be an abnormality in heart rhythm and it can be death, and I think that is exactly what happened.

The Employer's medical witness, Dr. Bendersky, testified that, in his professional opinion, the Decedent died a natural death from coronary artery disease and arteriosclerosis, and that the incident involving the lockers did not contribute to his death.

Based on the evidence presented, the referee concluded that because unequivocal medical testimony showed a causal connection between the Decedent's injury and death, and his employment, Claimant is entitled to compensation under the provisions of The Pennsylvania Workmen's Compensation Act (Act).[3] On appeal the Board took no new evidence and affirmed the referee's decision.

Before this Court the Employer contends (1) that the referee failed to identify the work-related injury that caused the Decedent's death and (2) that Claimant failed to establish her case by unequivocal medical evidence.

A claimant has the burden of proving his right to benefits. *Halaski v. Hilton Hotel,* 487 Pa. 313, 409 A.2d 367 (1979). And where, as here, the party with the burden of proof prevails before the referee, and the Board takes no additional evidence, our scope of review is limited to determining whether any constitutional rights were violated or an error of law was committed or whether a necessary finding of fact was unsupported by substantial evidence. *Bethlehem Steel Corp. v. Workmen's Compensation Appeal Board,* 70 Pa. Commonwealth Ct. 392, 453 A.2d 370 (1982).

A heart attack can be a compensable injury under Section 301(c)(1) of the Act,[4] provided it arises in the

---

[3] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§1-1601.1.

[4] 77 P.S. §411. This section reads, in pertinent part, as follows: (1) The terms "injury" and "personal injury", as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury; and wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resultant effects, . . . . The term "injury arising in the course of his employment," as used in this

course of employment and is related thereto. *Workmen's Compensation Appeal Board v. Jeddo Highland Coal Co.,* 19 Pa. Commonwealth Ct. 90, 338 A.2d 744 (1975); *Bethlehem Steel Corp.* And where, as here, an employee is not actually engaged in the furtherance of his employer's business, his injuries are compensable if (1) he is on the employer's premises; (2) is required by the nature of his employment to be present on his employer's premises; and (3) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon. *Workmen's Compensation Appeal Board v. U.S. Steel Corp.,* 31 Pa. Commonwealth Ct. 329, 376 A.2d 271 (1977); *Port Authority of Allegheny County v. Workmen's Compensation Appeal Board,* 66 Pa. Commonwealth Ct. 393, 444 A.2d 837 (1982). Thus, the Decedent's abnormal heart rhythm will be deemed a compensable injury if the causal relationship is established by unequivocal medical testimony. *Bethlehem Steel Corp.*

The referee clearly was persuaded by the testimony of Claimant's medical witness, Dr. Carver. Throughout his testimony, Dr. Carver stated unequivocally that in his opinion the incident with the lockers contributed to and accelerated the Decedent's abnormal heart rhythm which resulted in his death. Although this testimony was rebutted by the Employer's medical witness, the conflict was resolved by the referee in favor of Claimant. It is axiomatic that ques-

---

article . . . shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

tions of credibility and of conflicting evidence are for the referee, not for this Court. *City of Williamsport v. Workmen's Compensation Appeal Board,* 55 Pa. Commonwealth Ct. 618, 423 A.2d 817 (1980).

The Employer contends, however, that Dr. Carver's testimony was equivocal because on one occasion he testified that the Decedent suffered an arrythmia, an abnormality in the heart rhythm; while on another occasion Dr. Carver testified that the Decedent suffered an inferior wall myocardial infarction. Initially, Dr. Carver's testimony in this regard was that the Decedent suffered an arrythmia whether or not he had a heart attack. However, Dr. Carver was ninety-five percent sure that the Decedent did, in fact, suffer a heart attack, or a myocardial infarction.

Moreover, this Court stated recently in *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board,* 77 Pa. Commonwealth Ct. 202, 465 A.2d 132 (1983) that ''unequivocal medical testimony'' is a medical expert's testimony that in his professional opinion the claimant's ''condition . . . did [in fact] come from the work experience.'' *Id.* at 206, 465 A.2d at 134. The Court in *Philadelphia College* further stated that the medical expert's testimony need not be without "uncertainty, reservation, doubt or lack of information with respect to medical and scientific details; so long as the witness does not recant the opinion or belief first expressed.'' *Id.* at 206-207, 465 A.2d at 135. *See Latrobe Steel Co. v. Workmen's Compensation Appeal Board,* 41 Pa. Commonwealth Ct. 460, 399 A.2d 465 (1979) (medical expert's testimony equivocal with respect to the ''mechanism'' of death, yet, unequivocal with respect to the cause of death). Here, Dr. Carver testified unequivocally that in his opinion there was a direct causal relationship between the incident with the lockers and the Decedent's abnormal heart rhythm and ultimate death. We

must therefore conclude that there is substantial evidence in the record to uphold the referee's award.

Accordingly, the Board's order is affirmed.

ORDER

AND Now, July 5, 1984, the order of the Workmen's Compensation Appeal Board, No. A-82059, in the above-captioned matter is affirmed.