# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Southeastern Pennsylvania : 
Transportation Authority (SEPTA), : 
                           : 
               Petitioner : 
                           : 
           v. : No. 416 C.D. 2017
                           : Submitted: July 21, 2017
Workers' Compensation Appeal : 
Board (Woody), : 
                           : 
             Respondent : 

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED: September 21, 2017

         Southeastern Pennsylvania Transportation Authority (Employer) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed, as modified, a Workers' Compensation Judge's (WCJ) decision granting Eric Woody's (Claimant) reinstatement petition for a closed period and expanding the description of his work injury. Employer contends that Claimant's medical evidence was equivocal and not competent to support an expansion of the injury and that the WCJ capriciously disregarded evidence and failed to provide a reasoned decision. Upon review, we affirm.

## I. Background

On December 16, 2014, Claimant sustained a work-related injury while in the course and scope of his duties as a general helper. Employer issued a notice of compensation payable (NCP) accepting the injury described as a lumbosacral strain. Shortly thereafter, Claimant's benefits were modified to reflect reduced earnings following his return to work. In July 2015, Claimant filed a reinstatement petition, alleging that, as of March 30, 2015, he sustained a worsening of his condition, which caused decreased earning power. Employer filed an answer denying the material allegations. Hearings before a WCJ ensued.

During the course of proceedings, Claimant returned to work in a light-duty capacity on January 4, 2016. The parties continued to litigate the issue of Claimant's entitlement to a reinstatement of benefits from March 30, 2015 through January 4, 2016. WCJ's Opinion, 10/11/16, Finding of Fact (F.F.) No. 4.

In support of his reinstatement petition, Claimant submitted his deposition. He testified that he was out of work for a few weeks after his injury. He returned to work mid-January 2015, based on a job offer described as wheelchair lift checker and blocking assistant position. But, the job to which he returned entailed "walking up and down the bays in the cold with T-key locking the backs of doors and checking inspection stickers on the back of buses." F.F. No. 5. Claimant performed this position for two months. He was released to return to full-duty work during the last week of March 2015. However, Claimant did not feel capable of returning to work full duty because his range of motion was not good. He saw his family doctor, Bruce Williams, D.O. (Dr. Williams), on March 30, 2015, who restricted Claimant from returning to his full-duty position. Employer did not offer him modified work; the only job available was his full-duty

2

position. As a result, Claimant was out of work from March 30, 2015 through January 4, 2016. F.F. Nos. 4-5.

In addition, Claimant presented the deposition testimony of his treating physician, Vincent J. DiStefano, M.D. (Dr. DiStefano), who is board certified in orthopedic medicine. Dr. DiStefano first treated Claimant on August 4, 2015. He took a history from Claimant. At the time, Claimant complained of chronic pain in the low back to the left of midline, associated morning stiffness, and popping with reduced mobility. He performed a physical examination and reviewed the February 13, 2015 and June 30, 2015 MRIs of the lumbar spine. Dr. DiStefano initially diagnosed Claimant with an acute strain and sprain of the lumbar spine and an aggravation of pre-existing L4-L5 and L5-S1 right disc protrusion, as a direct result of the December 16, 2014 work injury. He opined that it was unlikely for Claimant to ever return to his pre-injury position which involved heavy lifting, upwards of 150 pounds, recommending instead a light-duty job with limitations on his lifting. Dr. DiStefano saw Claimant on November 3, 2015 and recommended EMG testing and pain management. The EMG revealed bilateral L4 and L5 radiculopathy. Based on the EMG, he thought it more likely that the disc herniations were symptomatic and causing radiculitis. He explained that the disc herniations or protrusions seen on the MRI are impinging on the L4 and L5 nerve roots, as demonstrated by the EMG. Dr. DiStefano maintained Claimant's restrictions previously imposed and opined that the restrictions are related to the work injury. F.F. No. 6.

Claimant submitted Armando A. Mendez, M.D.'s (Dr. Mendez) independent medical evaluation, dated July 31, 2015, in which Dr. Mendez diagnosed Claimant with a lumbar spine sprain and strain and an L4-5 and L5-S1

3

disc herniation, based on his review of the MRI report. He recommended further treatment, released Claimant to modified-duty work on a full-time basis with restrictions, and prohibited him from driving a bus or operating heavy equipment. F.F. No. 7.

Claimant also submitted the deposition of Daisy Zayas, an insurance claims adjuster. She confirmed that Employer did not permit Claimant to continue working as of March 30, 2015, based on the opinion of Dr. Williams that Claimant was unable to resume full-duty work. F.F. No. 8.

Employer presented evidence including a packet of medical records confirming that Claimant received treatment with Employer's medical panel for the work-related injury; a work-status summary form; a three-page document authored by Dr. Williams; an attachment to Dr. DiStefano's deposition releasing Claimant to modified work as of August 4, 2015; and, Ms. Zayas' log notes. Employer did not present evidence refuting the medical testimony offered. F.F. Nos. 9-12.

Based on the evidence presented, the WCJ found that Claimant was forced to stop working as of March 30, 2015, through January 4, 2016, as a direct result of his work injury. Although Claimant was released to modified-duty work as early as June 2015, Employer did not make modified duty work available to Claimant within his physical restrictions until January 4, 2016. F.F. No. 13. The December 16, 2014 work-related injury caused Claimant to suffer a total loss of earning power from March 30, 2015 through January 4, 2016. F.F. No. 16.

In addition, upon review of the unrefuted opinions of Dr. DiStefano, the WCJ found that "the description of the work-related injury must be amended to include an aggravation of pre-existing L4-L5 and L5-S1 right disc protrusion,

4

resulting in bilateral L4 and L5 radiculopathy, as a direct result of the December 16, 2014 work injury." F.F. No. 14. The WCJ found that "Dr. DiStefano offered his opinions as a treating physician and based his opinions on his examination findings and his review of the post-injury objective diagnostic evidence, and provided a sound, cogent explanation to support his causal opinions." F.F. No. 14.

Ultimately, the WCJ granted Claimant's reinstatement petition, expanded the description of the work injury to include an aggravation of pre-existing L4-L5 and L5-S1 right disc protrusions, resulting in bilateral L4 and L5 radiculopathy, and awarded temporary total disability benefits for a closed period.

From this decision, Employer appealed to the Board. Employer argued that the WCJ improperly omitted the word "right" from the description of the L5 radiculopathy injury. It also asserted that the WCJ erred by expanding the injury description to include an aggravation of a pre-existing injury on the basis it is not supported by unequivocal medical evidence. Finally, it argued that the WCJ's opinion was not reasoned because the WCJ capriciously disregarded relevant evidence, including Claimant's own testimony.

The Board agreed in part on the basis that the WCJ's finding omitted the word "right" from Dr. DiStefano's description of the injury. The Board modified the decision "to reflect an expansion of the injury description to include aggravation of pre-existing L4-L5 and L5-S1 right disc protrusions, resulting in bilateral L4 and *right* L5 radiculopathy." Board Opinion, 3/7/17, at 10 (emphasis in original). Insofar as Employer argued that Dr. DiStefano's testimony was equivocal because he used language such as "possible," "possibly," and "difficult to assign a temporal relationship," in rendering his opinion and gave certain concessions during cross examination, the Board rejected this argument, finding

5

that Dr. DiStefano's testimony, when read in its entirety, was unequivocal. Finally, the Board determined that the WCJ rendered a reasoned decision that contained findings of fact and conclusions of law and set forth the rationale for his decision. Because the issue of expanding the description of Claimant's injury involved a medical causation issue requiring expert testimony, the fact that the WCJ did not summarize all of Claimant's lay testimony regarding his symptomology did not make his decision unreasoned or constitute a capricious disregard of relevant evidence. Employer then petitioned this Court for review.[1]

## II. Issues

On appeal, Employer does not contest the determination granting the reinstatement petition. Rather, Employer challenges the expansion of the injury description. Employer contends that substantial, competent evidence does not support the expansion of the injury because Dr. DiStefano's testimony was equivocal. In addition, Employer contends that the WCJ did not issue a reasoned decision because he disregarded evidence regarding Claimant's injury.

---

[1] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Department of Transportation v. Workers' Compensation Appeal Board (Clippinger)*, 38 A.3d 1037 (Pa. Cmwlth. 2011). The appellate role in a workers' compensation case is not to reweigh the evidence or review the credibility of witnesses, but to determine whether the WCJ's findings have the requisite measure of support in the record as a whole. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992).

6

### III. Discussion
### A. Unequivocal Medical Evidence

First, Employer contends that the WCJ erred by accepting the medical opinions of Dr. DiStefano because his opinions are equivocal and thus, not competent evidence upon which to base a conclusion that Claimant's work-related injury includes an aggravation of pre-existing L4-L5 and L5-S1 right disc protrusions, resulting in bilateral L4 and right L5 radiculopathy.

Under Section 413(a) of the Workers' Compensation Act (Act),[2] the WCJ may amend the NCP at any time during litigation of any petition if the evidence shows that the injury sustained in the original work incident is materially incorrect, or upon proof that the disability of the injured employee has increased, decreased, recurred, or ceased in the context of a specific review petition. *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 580-81 (Pa. 2009). A claimant seeking to expand the description of the NCP bears the burden of proof. *Id*. at 582.

Where there is no obvious connection between disability and the work-related cause, unequivocal medical evidence is required. *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 498 A.2d 800, 802 (Pa. 1985); *City of Pittsburgh v. Workers' Compensation Appeal Board (Wilson)*, 11 A.3d 1071, 1075 (Pa. Cmwlth. 2011). To be unequivocal, "the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in his professional opinion the result in question did come from the assigned cause." *Lewis*, 498 A.2d at 802.

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§771, 772.

Medical evidence is competent when "[an] [expert's] opinion is sufficiently definite and unequivocal to render it admissible." *Pryor v. Workers' Compensation Appeal Board (Colin Service Systems)*, 923 A.2d 1197, 1203 (Pa. Cmwlth. 2006). Conversely, "[m]edical evidence which is less than positive or which is based upon possibilities may not constitute legally competent evidence for the purpose of establishing the causal relationship." *Lewis*, 498 A.2d at 802; *accord Potere v. Workers' Compensation Appeal Board (Kemcorp)*, 21 A.3d 684, 690 (Pa. Cmwlth. 2011). However, "the law does not require every utterance which escapes the lips of a medical witness on a medical subject to be certain, positive, and without reservation or exception." *Bemis v. Workers' Compensation Appeal Board (Perkiomen Grille Corp.)*, 35 A.3d 69, 72 (Pa. Cmwlth. 2011), *appeal denied*, 54 A.3d 350 (Pa. 2012), (citing *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 465 A.2d 132, 134 (Pa. Cmwlth. 1983)). "[A] medical witness's use of words such as 'probably,' 'likely,' and 'somewhat' will not render an opinion equivocal so long as the testimony, read in its entirety, is unequivocal and the witness does not recant the opinion or belief first expressed." *Id.* "[E]ven if the medical witness admits to uncertainty, reservation, doubt or lack of information with respect to medical and scientific details," his opinion, if accepted by the factfinder, will support an award "so long as the witness does not recant the opinion or belief first expressed." *Lucas,* 465 A.2d at 135.

Furthermore, inconsistent answers given on cross-examination do not necessarily destroy the effectiveness of previously expressed opinions by a medical expert. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board (Jakel)*, 377 A.2d 1007, 1010 (Pa. Cmwlth. 1977). However, when a

8

medical expert concedes during cross-examination too many possibilities as to the cause of the diagnosis, his medical testimony will be deemed equivocal and therefore insufficient as a matter of law. *Jones v. Workers' Compensation Appeal Board (J.C. Penney Co.)*, 747 A.2d 430, 432 (Pa. Cmwlth.), *appeal denied*, 764 A.2d 1074 (Pa. 2000).

We determine equivocality by reviewing a medical expert's testimony in its entirety. *Lewi*s, 498 A.2d at 803. Indeed, a final decision "should not rest upon a few words taken out of the context of the entire testimony." *Id*. The competency of medical evidence is a legal conclusion reviewable on appeal. *Potere*, 21 A.3d at 690.

Here, Dr. DiStefano first examined Claimant on August 4, 2015. Reproduced Record (R.R.) at 55a. He reviewed diagnostic studies including two MRIs of the lumbar spine performed on February 13, 2015 and June 30, 2015. R.R. at 25a. Based on his physical examination, the history Claimant provided and his review of medical records and diagnostic studies, Dr. DiStefano diagnosed Claimant with an acute strain and sprain of the lumbar spine and an aggravation of pre-existing L4/L5 and L5/S1 right disc protrusion, which he attributed to the work-related incident of December 16, 2014. R.R. at 60a. Specifically, Dr. DiStefano testified:

> A    *I diagnosed an acute strain and sprain of the lumbar spine and aggravation of pre-existing L4/L5 and L5/S1 right disc protrusion.*
>
> Q    Doctor, did you have an opinion within *a reasonable degree of medical certainty regarding causation of those diagnoses*?
>
> A    Yes.

9

Q      What was your opinion?

A      *I thought they were related to the accident of 12/16/14.*

Q      Doctor, at that point, what was your opinion regarding Mr. Woody's ability or inability to work in any capacity?

A      On that day [August 4, 2015], I opined that it was unlikely that he could ever return to his prior occupation, which involved -- that involved very heavy lifting, up to 150 pounds, and I felt in that respect he had permanent, partial disability and his prognosis for the near future was poor.

R.R. at 60a-61a (emphasis added).

Dr. DiStefano saw Claimant again on November 3, 2015, at which time Claimant presented with a burning pain in his right buttock with extension into the back of the right thigh. R.R. at 61a-62a. Based on his physical examination as well as an EMG nerve conduction study, Dr. DiStefano opined it was "more likely that his disc herniations were symptomatic and causing radiculitis." R.R. at 63a-64a. In addition, he testified:

Q      . . . What, if any, of the abnormal findings on the MRI studies would you relate to the 12/16/14 injury?

A      It is possible that the disc protrusions that were noted by the radiologist are a result of the injury. It can be difficult to assign a temporal relationship to what is seen on the MRI and what is manifested clinically. The point from my standpoint is that *he was not symptomatic prior to the accident and became symptomatic following. So I would think that there has been, at the least, an aggravation of pre-existing problems. Possibly, the accident caused the problems*.

Q      With respect to the bilateral L4 and right L5 radiculopathy, do you have an opinion within a

10

reasonable degree of medical certainty regarding causation of that?

A    That is what I was referring to. The disc herniations or protrusions impinge on those nerve roots, the L4 nerve roots and the right L5 nerve root and given that EMG picture.

Q    Not to beat a dead horse, but what is your opinion regarding the causation of that bilateral L4 and right L5 radiculopathy?

A    *Given its absence clinically at least or symptomatically, prior to the accident, I would have to assign its cause to the accident.*

Q    *Is that within a reasonable degree of medical certainty?*

A    *Yes.*

R.R. at 64a-65a (emphasis added).

On cross-examination, Dr. DiStefano acknowledged that it was "possible" that the MRI and EMG findings were solely related to the degenerative process. R.R. at 76a, 80a. He also testified that, according to his records, Claimant first reported symptoms in his lower extremities at the November 2015 evaluation. R.R. at 72a. Dr. DiStefano agreed with the accepted acute lumbar strain and sprain of his lumbar spine from the incident, "but . . . also felt [Claimant] sustained an aggravation of pre-existing disc problems." R.R. at 78a. Dr. DiStefano did not recant his testimony on direct examination that Claimant's clinical presentation showed impact and symptomatology, which were not present before the incident, thus supporting his view of an aggravation accompanied by radicular components as a result of the incident.

11

Upon review, although Dr. DiStefano admitted to some possibilities and uncertainty on cross-examination, he did not recant his opinion regarding causation. Dr. DiStefano candidly acknowledged that the line between degenerative and aggravated lumbar conditions may not always be definitive, but given the lack of symptomology before the incident and the clinical presentation afterwards, he believed that the work-injury aggravated Claimant's pre-existing degenerative disc problems. R.R. at 64a. When read in its entirety, Dr. DiStefano's testimony directly correlated the aggravation of his pre-existing disc condition to the work-related cause within a reasonable degree of medical certainty. Such testimony constitutes competent evidence on the issue of causation. Thus, we conclude that the WCJ did not err in expanding the description of the work injury based on this medical evidence.

## B. Reasoned Decision

Next, Employer asserts that the WCJ's decision is not reasoned and that the WCJ capriciously disregarded competent evidence. Specifically, Employer contends that the WCJ ignored Claimant's own testimony regarding his symptomology and a pain diagram completed by Claimant, which showed that Claimant did not report pain in his lower extremities until November 2015. According to Employer, this evidence undermines the competency of Dr. DiStefano's testimony.

To satisfy the reasoned decision requirements of Section 422(a) of the Act, 77 P.S. §834,[3] a WCJ must set forth the rationale for the decision by

---

[3] Section 422(a) of the Act provides:

**(Footnote continued on next page…)**

12

specifying the evidence relied upon and reasons for accepting it. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1047 (Pa. 2003). However, the WCJ is not required to address all of the evidence presented in a proceeding in his written adjudication. *Id.* Instead, to satisfy the "reasoned decision" requirement, a WCJ must only make findings necessary to resolve the issues raised by the evidence and relevant to the decision. *Pryor*, 923 A.2d at 1202 (the absence of findings relating to a psychological pain evaluation did not deprive this Court of effective appellate review or make the decision unreasoned); *see also Montgomery Tank Lines v. Workers' Compensation Appeal Board (Humphries)*, 792 A.2d 6, 13 n.10 (Pa. Cmwlth. 2002). When faced with

---

**(continued…)**

> Neither the board nor any of it members nor any workers' compensation judge shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834.

conflicting evidence, the WCJ must adequately explain the reasons for rejecting or discrediting competent evidence. *Daniels*, 828 A.2d at 1047.

In addition, review for "capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the Court." *Leon E. Wintermeyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002). "A capricious disregard amounts to a willful or deliberate ignorance of evidence which a reasonable person would consider important." *Id.*

Here, in accordance with the reasoned decision requirements of Section 422(a) of the Act, the WCJ properly considered the evidence before him, made all necessary findings and conclusions, and clearly articulated his reasons for accepting and rejecting the testimony. The WCJ found, as modified by the Board, that Claimant sustained an aggravation of pre-existing L4-L5 and L5-S1 right disc protrusions and bilateral L4 and right L5 radiculopathy as a result of his work injury. In reaching this finding, the WCJ relied on the testimony of Dr. DiStefano, which was unrefuted. The WCJ found that Dr. DiStefano "provided a sound, cogent explanation to support his causal opinions." F.F. No. 14.

Although the WCJ did not discuss Claimant's testimony regarding his symptomology or a pain diagram completed by Claimant, the WCJ was not required to address all of the evidence presented, only such evidence necessary to resolve the issues. The issue of whether Claimant's additional injuries were caused by the work-related incident depended upon the presentation of unequivocal medical evidence, not lay testimony. *See Lewis*, 498 A.2d at 802.

Insofar as Employer contends that Claimant's testimony and evidence regarding symptomology conflicted with or undermined Dr. DiStefano's

testimony, we disagree. Dr. DiStefano acknowledged that Claimant did not complain of radiating pain until the November 2015 examination in his testimony. R.R. at 72a-73a. Notwithstanding, Dr. DiStefano diagnosed Claimant with an aggravation of pre-existing L4-L5 and L5-S1 right disc protrusions and bilateral L4 and right L5 radiculopathy and related it to the work-related cause within a reasonable degree of medical certainty based on other data. Employer did not present any medical evidence refuting that Claimant sustained a work-related aggravation of a pre-existing condition. Upon review, we conclude that the WCJ issued a reasoned decision as required by Section 422(a) of the Act and did not capriciously disregard competent or competing material evidence.

## IV. Conclusion

For these reasons, we conclude that the description of Claimant's work-related injury was properly expanded to include an aggravation of pre-existing L4-L5 and L5-S1 right disc protrusions and bilateral L4 and right L5 radiculopathy.

Accordingly, we affirm the order of the Board.

_____
MICHAEL H. WOJCIK, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Southeastern Pennsylvania             :
Transportation Authority (SEPTA),     :
                                      :
                    Petitioner        :
                                      :
            v.                        : No. 416 C.D. 2017
                                      :
Workers' Compensation Appeal          :
Board (Woody),                        :
                                      :
                    Respondent        :


O R D E R


AND NOW, this 21st day of September, 2017, the order of the
Workers' Compensation Appeal Board, dated March 7, 2017, is AFFIRMED.


                          _____
                          MICHAEL H. WOJCIK, Judge