Daniel FYE, Petitioner,

v.

**WORKERS' COMPENSATION
APPEAL BOARD (SUPER
MOCHE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 16, 2000.
Decided Nov. 17, 2000.

Joseph M. Devecka, State College, for petitioner.

Perry D. Merlo, Camp Hill, for respondent.

Before McGINLEY, Judge, KELLEY, Judge, RODGERS, Senior Judge.

KELLEY, Judge.

Daniel Fye (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board). The Board affirmed an order of a Workers' Compensation Judge (WCJ) which granted Super Moche's (Employer) petition for review of utilization review petition (UR Petition). We affirm.

Claimant injured his back on March 2, 1993, in the course and scope of his work for Employer. Employer initially acknowledged Claimant's injury, and Claimant received benefits under the State of California's applicable law. Thereafter, the claim was transferred to Pennsylvania, where Claimant received benefits pursuant to the Pennsylvania Workers' Compensation Act (Act).[1] On July 12, 1996, Claimant underwent a cervical spine operation performed by Steven Wolf, M.D., and fur-

ther received follow up care in relation to that surgery. On December 3, 1996, Employer filed its UR Petition seeking review of the reasonableness and necessity of Claimant's July 12, 1996 surgery and antecedent care.[2]

Following hearings and the receipt of evidence, the WCJ issued a decision and order on December 31, 1997 concluding that Employer had met its burden of proving that Claimant's July 12, 1996 surgery was neither reasonable nor necessary, and granting Employer's UR Petition. Claimant timely appealed to the Board, which affirmed. Claimant now petitions this Court for review of the Board order.[3]

Claimant first contends that the WCJ erred in finding Employer's medical expert to be more credible than Claimant's medical expert. Claimant asserts that Employer's expert, J. Joseph Danyo, M.D., changed his opinion of Claimant's injury from one report to another, thereby making the expert's opinion equivocal and insufficient as support for the WCJ's findings. Specifically, Claimant argues that Dr. Danyo revised his opinion after viewing a surveillance videotape of Claimant's activities, and that this revision renders Dr. Danyo's opinion equivocal.

■ Employer bears the burden of proof to show that medical treatment is unreasonable and unnecessary in a utilization review proceeding such as the instant one. *Topps Chewing Gum v. Workers' Compensation Appeal Board (Wickizer)*, 710 A.2d 1256 (Pa.Cmwlth.1998). The question of whether medical testimony is equivocal or not is a question of law, and is to be determined by reviewing the entire testimony of the medical witness. *May*

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

2. Employer additionally filed a petition to review Workers' Compensation benefits, and a petition to modify or suspend Workers' Compensation benefits. Said petitions are not at issue in the instant appeal.

3. This Court's scope of review is limited to determining whether there has been a violation of constitutional rights, an error of law committed, or a violation of Board procedures, and whether necessary findings of fact are supported by substantial evidence. *Lehigh County Vo-Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995).

*Department Stores v. Workmen's Compensation Appeal Board (Smith)*, 105 Pa. Cmwlth. 580, 525 A.2d 33, *petition for allowance of appeal denied*, 516 Pa. 624, 532 A.2d 21 (1987). Medical evidence is unequivocal if the medical expert, after providing a foundation, testifies that in his medical opinion he believes or he thinks the facts exist. *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 77 Pa. Cmwlth. 202, 465 A.2d 132 (1983).

In the case *sub judice*, Employer submitted into evidence two separate reports from Dr. Danyo. In the first report, dated May 2, 1996, Dr. Danyo diagnosed Claimant with cervical radiculitis in the right upper extremity and residual chronic neck strain which was related to Claimant's March 2, 1993 work injury. Dr. Danyo recommended that Claimant undergo a diagnostic discogram to ascertain whether surgery was necessary. The May 2, 1996 report specifically abstains from advancing an opinion on the reasonableness or necessity of surgery for Claimant's injury. Supplemental Reproduced Record (S.R.R.) at 104b.

After Dr. Danyo's May 2, 1996 report was written, Employer hired an investigator to videotape Claimant's activities on June 12, 1996. That videotape, which was entered into evidence before the WCJ, had been reviewed by Dr. Danyo and subsequently referenced in Dr. Danyo's second report, authored on July 17, 1996. In the July 17, 1996 report Dr. Danyo stated that, after viewing Claimant's activities on the videotape, Dr. Danyo revised his medical opinion to reflect his professional belief that Claimant's cervical radiculitis and residual neck strain were not disabling, and that Claimant should have no restrictions placed upon him in light of both Dr. Danyo's examination and the activities reflected on the videotape. It is in the July 17, 1996 report that Dr. Danyo makes his first and only recommendation regarding surgery for Claimant's condition, stating:

This man has a cervical radiculitis and residual chronic neck strain by history. The extent of that is subject to considerable doubt. I cannot state within a reasonable degree of medical certainty that he has any pain.

I do not recommend an operation based upon what I see in the video. I would offer no restrictions as far as working.

S.R.R. at 109b.

■ We disagree that Dr. Danyo's reports, when viewed in their totality, are equivocal. Dr. Danyo clearly laid a foundation for his professional opinion, basing it on both his physical examination of Claimant, and his viewing of Claimant's physical activities on the surveillance videotape. The videotape presented telling medical information regarding Claimant's actual, as opposed to his stated, physical capabilities. Dr. Danyo, after viewing the videotape, opined that Claimant should be under no restrictions, and Dr. Danyo did not recommend the surgery that Claimant elected to undergo on the advice of his personal physician. The fact that Dr. Danyo, during the course of forming his professional opinion, had occasion to revise his original view of Claimant's abilities and condition after reviewing further information about Claimant does not render Dr. Danyo's opinion equivocal. Dr. Danyo's July 17, 1996 report reflected his final professional opinion, and served as his one and only recommendation regarding Claimant's surgery. It is clear that Dr. Danyo believed, thought, and unequivocally stated that Claimant's condition did not require surgery. This statement did not contradict any statements made in Dr. Danyo's prior report, and was not equivocal. *Philadelphia College of Osteopathic Medicine.* The evolution of a professional opinion, especially in the wake of previously unknown pertinent facts about a claimant's physical abilities, does not constitute equivocality.

■ The WCJ, as the ultimate fact finder in Workers' Compensation cases, has exclusive province over questions of credi-

bility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 140 Pa.Cmwlth. 461, 593 A.2d 921, *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991). As credibility is the sole province of the WCJ, we will not disturb his finding of Dr. Danyo's testimony as credible. *Id.*

Finally, Claimant asserts that the July 12, 1996 surveillance videotape taken of Claimant's activities, and entered into evidence before the WCJ, was so "profoundly edited" as to require remand of the matter back to the WCJ for consideration of the allegedly expunged portions. Claimant concedes that he did not raise the issue of the tape's alleged editing before the WCJ. Pennsylvania Rule of Appellate Procedure 1551 precludes the consideration by this Court of any question that was not raised before the WCJ, with an exception for any question that a petitioner could not have raised before the WCJ by the exercise of due diligence. Claimant, however, admits that the videotape in question was "suspect immediately" upon viewing. Claimant's brief at 11, fn. 2. Additionally, it is clear from the record that, during the viewing of the videotape, the testimony of Rod A. Brandt, the investigator who took the video in question, established that Brandt was present at the time the tape was taken for a period from at least 12:45 p.m. until 6 p.m. S.R.R. at 62b. Such an extended period during which video taping could have been performed clearly establishes that the potential for editing the tape existed, and was, in fact, most probable. Further, during his testimony before the WCJ Brandt was allowed to fast forward the videotape, thereby excluding portions from the WCJ's view in a way substantively identical to any alleged edit. *Id.* The record is equally clear that Claimant did not object to either the exclusion of portions of the videotape via fast forwarding, or to the "immediately suspect" nature of the tape itself.[4] S.R.R. at 75b. The exercise of due diligence on the part of Claimant should have unmistakably led Claimant to the immediate conclusion that a question as to the video's content, in relation to the time span over which the investigator took the video, existed. Because that issue was not raised before the WCJ, Claimant has waived this question for purposes of appellate review[5].

Accordingly, we affirm the order of the Board.

### ORDER

AND NOW, this 17th day of November, 2000, the order of the Workers' Compensation Appeal Board dated December 14, 1999, at A98–0212, is affirmed.

---

4. Notwithstanding Claimant's waiver of this issue, we note that Claimant has advanced no theory as to what the allegedly edited portions of the tape may have contained that would have, in any way, countered the effect of the shown portions of the tape. The record makes clear that the tape shows Claimant, *inter alia*, lifting a picnic table, bending, squatting, raising his hands above his head, lifting and carrying a wooden platform and other heavy objects such as rocks and bricks, and extending his arms above his shoulders while working. S.R.R. at 61b–70b. We fail to comprehend how any content that may have been edited would serve to counter this evidence. As Claimant's own counsel asserted during the hearing before the WCJ, "the video speaks for itself as far as what [Claimant] did and what he didn't do". S.R.R. at 74b.

5. Claimant inartfully also argues that the edited videotape, as the evidence upon which the WCJ based his conclusion that Claimant's surgery was not reasonable and unnecessary, requires reversal of that conclusion. As we have found that Claimant waived this issue by failing to preserve it below, we will not address it.