IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Radnor Township     :
    Petitioner   :
          : No. 690 C.D. 2016
   v.      :
          : Submitted: November 23, 2016
Workers' Compensation  Appeal :
Board (Byrd),     :
    Respondent  :


BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
     HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH      FILED:  March 20, 2017


    Radnor Township (Employer) petitions for review of the April 1, 2016 order of the Workers' Compensation Appeal Board (Board), affirming the decision and order of the Workers' Compensation Judge (WCJ), which granted the claim petition of Ronald Byrd (Claimant).


## Facts and Procedural History

    Claimant filed a claim petition on August 27, 2012, alleging that he suffered work-related injuries on or about April 16, 2012, as a result of exposure to organic material during his employment as a sanitation worker.  Before the WCJ, Claimant orally amended the claim petition to allege an occupational disease,

reflecting exposure at work which caused severe pulmonary impairment due to hypersensitivity pneumonitis. (WCJ's Decision at 3.)

Claimant worked for over 21 years as a laborer in Employer's Sanitation Department, handling residential trash pick-up. In 2011, Claimant began having breathing problems and underwent testing, blood work, and biopsies. During this course of treatment, his symptoms only occurred while performing his job duties for Employer. (WCJ's Findings of Fact Nos. 3-a, 3-b.)

On April 16, 2012, Claimant was taken off work by his physician, David Prince, M.D., because he was experiencing shortness of breath, which Claimant reported to his supervisor, to whom he gave a note from Dr. Prince. Claimant attempted to return to a light-duty job with Employer in September of 2012 because Employer told him, "if I don't come back, I would have [been deemed to have] abandoned my job." (Reproduced Record (R.R.) at 74.) While working the modified duties, Claimant continued feeling tired and short of breath, so Dr. Prince provided Claimant with another note to take him off work due to his respiratory issues, in September of 2012. He has not returned to work since then. (WCJ's Findings of Fact Nos. 3-c, 3-d.)

Claimant "has never been a smoker and does not have a family history of lung maladies. He has never worked in a coal mine. He has never filed a previous workers' compensation claim." (WCJ's Findings of Fact Nos. 3-e, 7-f.)

Claimant further testified by deposition that after he stopped working, his condition has remained the same, and that he felt short of breath while he was performing the light-duty job provided by Employer, and he gets short of breath as well while walking. He testified that he never wore any respiratory protection while working for Employer. (WCJ's Finding of Fact No. 7.)

2

In support of his claim petition, Claimant offered reports and deposition testimony of Dr. Prince. Board-certified in internal medicine, pulmonary medicine, critical care medicine, and sleep medicine, Dr. Prince first commenced treatment of Claimant on June 21, 2011. Claimant presented with shortness of breath, and a battery of tests and biopsies ultimately demonstrated hypersensitivity lung disease. Subsequent treatment and testing revealed diffuse interstitial lung disease with a pathologic picture characteristic of chronic hypersensitivity pneumonitis. Updated CT scans and pulmonary function testing provided additional evidence for the diagnosis of chronic hypersensitivity lung disease. (WCJ's Findings of Fact Nos. 4-a, 4-b, 5-a, 5-c.)

Dr. Prince testified that Claimant's hypersensitivity lung disease was caused by exposure to organic materials absorbed from his work as a sanitation laborer with Employer. Specifically, Dr. Prince identified what potential organic materials to which Claimant would have been exposed: "Molds, decaying leaves, decaying wood chips, decaying garbage. Typically when you see—there is no doubt that he has chronic hypersensitivity lung disease, it is an absolute fact from the lung biopsy. It is always due to some kind of decaying material." Dr. Prince also testified that such exposure could not have come from home or any other possible source. (WCJ's Findings of Fact Nos. 4-d, 4-h, 7-a, 7-h.)

Accordingly, Dr. Prince testified that he determined that Claimant's lung disease was work-related on February 23, 2012, and provided a medical note to that effect. In his most recent assessment, Dr. Prince stated that hypersensitivity lung disease progresses and that even with the current lack of exposure to organic materials, the disease will be with Claimant always, progressing until he will need a lung transplant. Claimant will always need treatment, stated Dr. Prince, and he is

3

unable to work in any capacity as the result of the work-related exposure. (WCJ's Findings of Fact Nos. 4-e, 4-f, 6-c, 6-f, 6-g.)

As part of its case in chief, Employer offered deposition testimony of three supervisors, Paul Bazik, Steve McNelis, and Robert Tate. Mr. Bazik was the Superintendent of Public Works, who confirmed Claimant's description of his regular job duties and said he never witnessed Claimant having any physical problems at work. (WCJ's Finding of Fact No. 9.)

Mr. McNelis was the Supervisor of Employer's Highway and Refuse Departments, who confirmed that Claimant told him he was experiencing breathing problems "sometime during the summer of 2012" and that Claimant "absolutely" was a good employee. (WCJ's Finding of Fact No. 10.)

Mr. Tate was Employer's Assistant Finance Director and Human Resources Manager. He testified that during the summer of 2012, Employer explored with Claimant a light-duty position, and that Claimant returned to work with Employer on September 4, 2012. The position was clerical in nature, involving filing chores. Claimant last worked that modified job on September 21, 2012, and on September 25, 2012, Claimant provided him with an off-work note from Dr. Prince dated September 5, 2012. Mr. Tate testified that Employer granted Claimant's request for unpaid leave under the Family and Medical Leave Act[1], and confirmed that Claimant was awarded long-term disability benefits under a plan fully funded by Employer. On or about October 5, 2012, Mr. Tate sent Claimant a letter warning him of potential discipline if Claimant failed to engage in an "interactive dialogue" with Employer, and Employer subsequently fired Claimant. (WCJ's Finding of Fact No. 11.)

---

[1] 29 U.S.C. §§2601-2654.

4

Employer offered the testimony and reports of John Cohn, M.D. Board-certified in internal medicine, allergy and immunology, and pulmonary medicine, Dr. Cohn did not meet, interview, or examine Claimant, but did review medical records of Claimant's case, including pertinent diagnostic studies. Dr. Cohn asserted that the biopsy results were compatible with (but not diagnostic of) hypersensitivity pneumonitis. For him, the medical question turned on the fact that Claimant did not improve at all once removed from the work environment. He admitted that lack of improvement could still result in the progression of this disease, but that was not the case with Claimant, who he believes suffered from non-work-related usual interstitial pneumonitis, which is a disabling factor but which would not prevent Claimant from working a light-duty office job. (WCJ's Findings of Fact Nos. 8-f, 8-o, 8-r, 12-f, 12-g, 12-k, 12-l, 13-b.)

On cross-examination, Dr. Cohn agreed that not every patient afflicted with hypersensitivity pneumonitis improves after removal from the exposures, but he conceded that Claimant might be one of those patients. (WCJ's Findings of Fact Nos. 8-a-c, 8-k.)

The WCJ credited Claimant's testimony as to job duties, exposure to organic materials, and his symptoms and complaints. He found Claimant's credibility enhanced by the fact that he was a long-time employee of Employer, with a good reputation and a willingness to return to work to try the light-duty job. The WCJ also believed the lay witnesses offered by Employer. (WCJ's Findings of Fact Nos. 14, 16-18.)

Regarding medical evidence, the WCJ went into great detail concerning why he found Dr. Prince more credible than Dr. Cohn, including: (1) Dr. Prince has been engaged in active treatment of Claimant whereas Dr. Cohn had never met or

5

spoken with Claimant; (2) Employer offered extensive testimony of Dr. Cohn but declined to call as a witness a physician who had performed the first independent medical evaluation for Employer; (3) Dr. Prince understood and explained the gradual but progressive nature of Claimant's chronic hypersensitivity pneumonitis; (4) Dr. Prince understood and explained why this disease continues and worsens even after removal from exposure; and, (5) Dr. Prince's opinions more closely reflected the other medical data, especially the diagnostic studies. (WCJ's Finding of Fact No. 15.)

After weighing the evidence, the WCJ found that Claimant had suffered an injury on or about April 16, 2012, namely, disabling chronic hypersensitivity pneumonitis. He found that Claimant had provided statutory notice on April 16, 2012. He further found Claimant totally disabled and not fully recovered from this work injury, and that he had stopped working at the light-duty job on September 21, 2012, because of his ongoing disability. (WCJ's Findings of Fact Nos. 3-c, 19-23, 32.)

Employer appealed to the Board, arguing lack of notice, lack of substantial evidence supporting the WCJ's decision, that a suspension was warranted, that the WCJ capriciously disregarded evidence, and that the WCJ failed to render a reasoned decision.

In an opinion and order of April 1, 2016, the Board rejected Employer's arguments and affirmed the WCJ's decision and order on the following grounds: (1) Claimant provided timely notice of the injury; (2) the WCJ's decision was supported by substantial, competent evidence; (3) Employer was incorrect in asserting that Dr. Prince never said Claimant's occupational exposure was a substantial, contributing factor in Claimant's disability (and incorrectly alleged as well that Dr. Prince said

6

household exposures contributed to Claimant's disease); (4) the WCJ did not err by declining to award a suspension because he found as a matter of fact that Claimant ceased working the light-duty job "due to his ongoing disability stemming from his work injury" (Board op. at 9); (5) the WCJ did not act capriciously by allowing discussion of medical reports not offered into evidence; such reports normally did constitute hearsay, unless they are reports "upon which the expert customarily relies in the practice of the expert's profession," which was the case here (Board op. at 10); (6) the WCJ did not err in granting the claim petition because of what Employer had styled insufficient data in the scientific literature to support the grant of benefits; and, (7) the WCJ did offer a reasoned decision, that is, a decision which allowed for adequate appellate review.

Employer has filed a petition for review with this Court, reciting the same arguments.[2]

## Discussion

### Notice to Employer

Section 311 of the Workers' Compensation Act[3] (Act) reads in pertinent part that unless an employer has knowledge of the work injury, the injured worker must provide notice to the employer within twenty-one days after "the occurrence of injury," or else "no compensation shall be allowed." Section 311 concludes, "The

---

[2] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §631.

7

term 'injury' in this section means, in cases of occupational diseases, disability resulting from occupational disease."

In Mr. Bazik's deposition, he testified about an internal Employer form which he completed along with Claimant to report a work injury or occupational illness. (Bazik deposition exhibit 1.) The portion of the report completed by Claimant has an illegible date but the date indicated by Mr. Bazik as responding and completing his end of the investigation was July 23, 2012. *Id.* Accordingly, even if there was no other notice by Claimant, the passage of time between April 16, 2012, and July 23, 2012, was 98 days, well within the mandate of Section 311.

Moreover, Claimant testified that he gave Dr. Prince's medical note to Mr. Bazik on April 16, 2012, Claimant's last day of work at his regular job. While that medical note (Claimant's Exhibit C-1 before the WCJ) did not mention any connection between work and Claimant's respiratory problems, Claimant testified credibly that he informed Mr. Bazik at that time that his condition was work-related. Additionally, when Claimant requested leave under the Family and Medical Leave Act on April 27, 2012, he noted that his "severe pulmonary impairment" was "likely due to exposure to organic material. . . ." At some point in April of 2012, in fact, Mr. Bazik testified that Claimant told him that his "doctor thinks it's work related." (R.R. at 70-71, 174-75, 180, 199-201.)

Under Section 311, where an occupational disease is alleged, "the time for giving notice under the 120 day mandate begins to run from the time the claimant is *disabled*, and also knows or should know he is disabled." *Gaff v. Workers' Compensation Appeal Board (Babcock and Wilcox)*, 592 A.2d 827, 829 (Pa. Cmwlth. 1991) (emphasis in original). Applying *Gaff*, this Court subsequently explained that "because a claimant is not legally disabled for purposes of workmen's compensation

8

until the claimant suffers a loss of earning power,…the earliest date on which the claimant could have been disabled and, hence, could have given notice of a work-related disability was his last day of work." *Diehl v. Workmen's Compensation Appeal Board (Tasco Insulation, Inc.)*, 618 A.2d 1175, 1177 (Pa. Cmwlth. 1992).

Both *Gaff* and *Diehl* involved injured workers who had filed lawsuits related to asbestos exposure before they filed their workers' compensation claims. Their knowledge of "work-relatedness" preceded their respective last days of work, and this Court applied Section 311 to mean that a WCJ should measure the 120 days from the last day of work where occupational disease is at issue.

Thus, here, the WCJ and the Board held properly that notice was timely because it was either provided on the same day as Claimant's last day at his regular job, or at most, it was given eleven days later. Under any examination of the record, Claimant's notice was timely.

## WCJ's Decision was Supported by Substantial Competent Evidence

The credible testimony of Claimant and Dr. Prince constitutes substantial evidence in support of the WCJ's decision. Further, Employer's argument is belied by the detailed findings of fact outlined above, as well as the WCJ's thoughtful closing finding, in which he noted the "highly qualified medical experts" on both sides in a matter that was "very serious and complicated." (WCJ's Finding of Fact No. 32.)

As the WCJ noted, both lawyers engaged in "zealous representation" in a "very close and difficult case to decide." *Id.* This resulted in a record filled with competent evidence, lay and expert, to support the WCJ's decision.

9

As a corollary to this argument, Employer argues that the WCJ's failure to identify a particular material to which Claimant was exposed and specific dates when he was exposed, renders his findings arbitrary and capricious. Whenever a party makes such an allegation, the reviewing tribunal must address the allegation. *Leon E. Wintermyer, Inc., v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487-88 (Pa. 2002). As the Board noted in its opinion, "capricious disregard by definition does not exist where, as here, the WCJ expressly considers and rejects the evidence." (Board op. at 9, n. 5.)

Employer's real complaint is that the WCJ weighed and rejected its evidence. However, the law is well settled that in a workers' compensation proceeding, the WCJ is the ultimate fact-finder and is the sole authority for determining the weight and credibility of evidence. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997), *appeal denied*, 718 A.2d 787 (Pa. 1998). In the present case, the WCJ acted neither arbitrarily nor capriciously.

### Employer Incorrectly Characterized Dr. Prince's Testimony

Employer's contention here is inaccurate at best: "Dr. Prince conceded that the home exposure acted in concert with the work exposures, yet he never testified whether or not the work place was a substantial contributing factor in the contraction of the HP [hypersensitivity pneumonitis] . . ." (Employer's brief at 29.)

Again, Employer confuses a plethora of case law citations in its brief with their inapplicability to the case at bar. Here, Dr. Prince testified that there were no other causal exposures beyond the organic materials from Claimant's work, and he

10

further testified that Claimant's disease and disability was "definitely due to work." (R.R. at 20, 22-24, 42.)

### Suspension of Benefits was Inappropriate

Employer next chastises the WCJ for not granting a suspension of benefits effective the date Claimant commenced the light-duty job. Employer makes serious charges that Claimant's physician's note was "contrived" and intentionally "back dated," and that the WCJ "misquotes and mischaracterizes" the evidence. Again, none of these contentions are supported in the record.

Employer actually purports to justify its request for a suspension of benefits because Claimant's "only excuse for not doing the [light-duty] job is that it was dusty and made him feel short of breath." (Employer's brief at 33.) As the Board concluded concerning this issue, "The WCJ found as fact that Claimant stopped working in the light duty capacity due to his ongoing disability stemming from his work injury." (Board op. at 9.)

This Court has held that where "the WCJ credited the testimony of Claimant's medical witness that Claimant's restrictions are permanent . . . the WCJ acted within his authority in finding that Claimant always will be subject to restrictions with respect to her job duties," so that suspension was not warranted. *Kmart v. Workers' Compensation Appeal Board (Williams)*, 771 A.2d 82, 85-86 (Pa. Cmwlth.), *appeal denied*, 788 A.2d 381 (Pa. 2001).

Based on credible and competent evidence of Claimant's ongoing and progressive disability, the WCJ and Board acted appropriately in denying Employer's request for a suspension.

11

**WCJ Properly Allowed Reference to Medical Report**

Employer next argues that the WCJ "committed legal error by relying on properly objected to hearsay evidence to support a finding of causally related ongoing disability. . . ." (Employer's brief at 38.)

Employer is referring to references to the reports of other physicians during the testimony of Employer's expert, Dr. Cohn. The references in Dr. Cohn's second deposition on August 7, 2013, consisted of questions by Claimant's counsel concerning Daniel DuPont, D.O., and Robert Kotloff, M.D. (Cohn 8/7/13 deposition at 71-121 and deposition exhibits 3-6.)

However, the WCJ never relied upon any of these hearsay reports to render his findings of fact and conclusions of law.

Finally, even though these hearsay reports were discussed at Dr. Cohn's deposition, the Board was undoubtedly correct when it held that "a medical witness may express an opinion based in part upon medical reports that are not part of the record, but upon which the expert customarily relies in the practice of the expert's profession," citing *Westinghouse Electric Corporation/CBS v. Workers' Compensation Appeal Board (Burger)*, 838 A.2d 831, 838 (Pa. Cmwlth. 2003). (Board op. at 10.)

Neither the WCJ nor the Board erred because the WCJ did not rely on any hearsay evidence to reach his decision.


**WCJ did not Err Regarding Adequate Scientific Basis for Expert's Opinions**

Employer advances a challenge to the WCJ accepting medical testimony and evidence that was supposedly inappropriate under Pa.R.E. (Rule) 702 and what he called "the *Frye* test." (Employer's brief at 45-47.)

12

That court case, of course, is the basis of Rule 702, and its full title and citation is *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). Employer, however, does not cite or discuss *Frye*, but instead cites *Fye v. Workers' Compensation Appeal Board (Super Moche)*, 762 A.2d 428, 430 (Pa. Cmwlth. 2000), *appeal denied*, 775 A.2d 810 (Pa. 2001), a case which neither addresses *Frye* nor otherwise discusses "the *Frye* test." Nevertheless, we note that *Frye* offers support for admission of the testimony of Dr. Prince, which in any event was not objected to by Employer's counsel before, during, or at the close of Dr. Prince's testimony. (R.R. at 10-53.)

Because Dr. Prince's testimony was within the ambit of expert testimony under *Frye* and Rule 702, it was properly admitted into evidence and relied upon by the WCJ.

**Reasoned Decision**

Section 422(a) of the Act reads in pertinent part as follows:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decision so that all can determine why and how a particular result was reached.

77 P.S. §834.

Our Supreme Court has held that "a decision is 'reasoned' for purposes of Section 422(a) if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003). In the present case, the WCJ offered detailed and incisive findings of fact concerning a case in which he had to

13

ponder and weigh a complex medical problem, both in terms of diagnosis and causation. The WCJ here provided the parties and the courts with an opportunity for adequate review. The decision certainly was "reasoned" as required under Section 422(a).

## Conclusion

Because Claimant provided Employer with timely notice of his work injury, and the WCJ's decision was supported by substantial evidence, was not capricious, and was well-reasoned, the Board did not err in affirming the WCJ's decision.

Accordingly, the order of the Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Radnor Township                :
         Petitioner          :
                           :    No. 690 C.D. 2016
         v.                 :
                           :
Workers' Compensation Appeal  :
Board (Byrd),                :
         Respondent     :

## _ORDER_

AND NOW, this 20th day of March, 2017, the order of the Workers' Compensation Appeal Board, dated April 1, 2016, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge